hDUFRESNE, Judge.
This suit was brought against T.J. Ward General Contractor, Inc., the contractor for a new school building, by Heritage International Decorating Services, Inc., a painting subcontractor, for some $21,500.00, which it claimed was still owing for work done at the school. After trial on the merits, the trial judge awarded Heritage the retainage of $6,593.70, with legal interest from date of demand. He rejected its claim for the remaining $14,963.72, however, on the grounds that this charge was actually for the repainting of damaged areas and final toueh'-up at the end of the project, all of which work was included in the original bid price. Ward has now appealed the award of the retainage and particularly the additional award of legal interest from date of demand. Heritage has appealed the dismissal of its demand of $14,-963.72, which it contends was for work beyond |2that contemplated in its bid. For the following reasons, we amend the judgment to provide that judicial interest on the retainage proper should commence on the date Ward was paid the total retainage for the project by the owner. In all other respects the judgment is affirmed.
In January of 1988, Ward contracted with the Orleans Parish School Board to be the general contractor for construction of the new Benjamin Franklin High School on Leon C. Simon Boulevard in New Orleans. The following month, Ward sub-contracted all of the painting work on the job to Heritage for a total bid price of $125,469.00. During the course of the project, certain extra work authorizations and change orders increased the bid price to $134,412.70, and Heritage was promptly paid $128,608.91, of this amount. The remaining $5,803.79, as well as an additional adjustment of $790.00, or a total of $6,593.79, was retained by Ward pending acceptance of the project by the owner and release or satisfaction of any liens relating to Heritage which may have been filed against the project.
Heritage disputed the total price for its job, and claimed that an additional $15,-753.72, had been approved at the end of the project by a Ward representative as per a document identified as Extra Work Authorization Number Three (EWA #3). There was no evidence to establish who actually drew up the document, but it was signed on May 4,1990, by John Silbernagle, the project manager for Ward. The ^document consists of a list of items which make reference to work which Heritage had to re-do or touch-up because its original work had been damaged by workers from other trades. Included with each item is a “backcharge” indicating which other contractors were allegedly responsible for the damage. The document also purports to show that Silbernagle approved an increase in the overall sub-contract price by the $15,753.72, figure sued upon.
At trial of the matter, the parties stipulated to introduction of the contract, subcontract, painting specifications, various change orders, and the EWA #3 described above. Only two witnesses appeared: T.J. Ward, president and owner of Ward, and Ernest Swibel, Ward’s project superintendent for this job. Both men were asked to explain what “extra work authorizations” actually were, and how they were generated. Both gave the same basic explanation about these documents, which is as follows. On occasion during the course of any construction project situations arise where work has to be re-done because of damage done to completed work by other sub-contractors, or where work becomes more difficult because of altered conditions brought about by the order in which other sub-contractors have done their work. Generally in such situations, the sub-contractors involved agree to some shifting of the costs of these changes by way of an “extra work authorization.” These documents typically show the work involved, an additional credit in favor of the sub-contractor having to |4re-do old work or do extra work, and a “backcharge” or debit to the account of the sub-contractor responsible for the problem. Where the parties involved agree to the changes, the contractor *1207 makes the appropriate adjustments to their various accounts.
Mr. Swibel further testified that as a rule any proposed “backcharges” submitted to Ward would be sent out for approval to the sub-contractor whose account was to be debited. If that approval was not forthcoming, then the “backcharge” would not be made. He stated that when the EWA #3, at issue • here, was presented to the other listed subcontractors, they refused to accept these “backcharges” because they did not feel responsible for any of the extra work. He further testified that the work referred to in EWA #3 was actually for normal repair and touch up work which any painter should expect at the end of any job and should take into account when submitting a bid. Mr. Ward similarly testified that because of the disagreement about the “backcharges” the matter eventually reached his desk. He further said that his discussions with the other sub-contractors and review of their various sub-contracts, including the one with Heritage, convinced him that neither they nor Ward were liable to Heritage for the alleged extra work. He therefore refused to adjust the accounts of these sub-contractors in favor of Heritage for the disputed amount. It was agreed at trial, however, that a few of the sub-contractors had decided to accept their “backcharges” as per |SEWA #3 in the aggregate amount of $790.00, and that these funds had also been withheld by Ward in addition to the retainage of $5,803.79. Thus, of the $15,753.72 figure claimed as to EWA #3, only $14,963.72 remained in dispute at the time of trial.
The Heritage painting sub-contract incorporated by reference Section 09900 (the painting specifications) of the general contract for the school. In regard to the obligations of the painter, that section pertinently provided:
At completion of work of other trades, touch up and restore all damaged or defaced surfaces.
After hearing the above testimony, particularly that of Mr. Swibel, and reviewing the contract provisions, the trial judge determined that the work referenced in EWA #3 was indeed remedial in nature as per the above contract clause, and thus was included in the original bid price. He further stated that because the work was a part of the original bid, there was no additional consideration in favor of Ward which would support an award to Heritage of additional payment. In other words, he found as a matter of fact that Heritage had already been paid for the work, and was in effect seeking to be paid twice for the same work. He therefore ruled in favor of Ward as to the $14,963.72 remaining on the EWA #3 claim.
As to the retainage, there was no dispute at trial as to the amount being withheld under the provisions Paragraph 12 of the original sub-contract. That paragraph provided that the retainage |6would be paid upon 1) satisfactory completion of the work, 2) acceptance of the work by the school board, 3) payment of the retainage to the contractor by the school board, and 4) provided that the sub-contractor furnished a release to the contractor and school board of all claims and liens relating to its work. In his reasons for judgment, the trial judge simply stated that he “finds that [$6,593.79] is presently due and owing.” He thus entered judgment for this amount, with legal interest from date of judicial demand, in favor of Heritage. Both parties now appeal.
As to Heritage’s claim for the $14,-963.72, it urges two grounds upon which the dismissal of this claim should be reversed. It first asserts that the trial judge erred early in the proceedings in denying its motion for summary judgment. Because the matter has been tried and judgment rendered on the merits, that issue is now moot. Moreover, La.Code Civ.Pro., art. 968, specifically precludes an appeal from the trial court’s refusal to render such a judgment. We therefore need not consider this issue further.
The second argument advanced by Heritage involves the interpretation of EWA #3. It proposes that it should recover the payment for work outlined in that document 1) because it was undisputed that that work was satisfactorily performed, and 2) because Mr. Silbernagle signed off on it as Ward’s representative, thus authorizing the additional *1208 payment. It further ^proposes that because Ward did not plead the affirmative defense of failure of consideration, or raise as a defense the various contracts and sub-contracts, and particularly Section 09900 of the painting specifications, it should have been precluded from presenting evidence of these matters at trial to defeat the claim. We reject this line of reasoning as well.
As to the arguments concerning Ward’s failure to plead certain affirmative defenses, we need not decide whether those matters were in fact defenses which must be specially pleaded pursuant to La.Code Civ. Pro., Art. 1005. We so conclude because Article 1154 of this same Code provides that when issues not raised in pleadings are tried by the express or tacit consent of the parties, they are to be treated as though raised in the pleadings. Where evidence which goes to such issues, including affirmative defenses, is received without objection, the pleadings are considered as having been enlarged to include these issues, Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d 1157 (La.App. 3rd Cir.1988). In the present case, all of the contract and subcontract documents, including Section 09900 of the painting specifications, were introduced as joint exhibits. Further, the testimony of Mr. Swibel concerning what EWA #3 was, how this type of documents is generated on the jobsite, and that the work referred to in the document was simply repair of damage to prior work and final touch-up, was not only not objected to at trial, but was in |8fact elicited by Heritage’s counsel himself. Neither was there any objection to the testimony of Mr. Ward that extra work authorizations were never put into effect until the “backcharges” were agreed to by the sub-contractors who would have to bear these debits, and that in this case no such agreement was ever reached for all but $790.00 of the charges. The pleadings were thus tacitly amended to include all issues related to the contracts, as well those concerning the nature of the work referenced in EWA #3 and whether that work was encompassed in Heritage’s original bid.
When all of the above documents and evidence are considered, the pertinent questions in the case become the factual ones of whether the work referenced in EWA #3 was indeed included in the bid price, and did the signature of Mr. Silbernagle to EWA #3 perfect an agreement by Ward to pay the additional amount. The trial judge explicitly found in Ward’s favor as to the first question, and did so implicitly as to the second. Because these are factual findings, we are permitted to set them aside only if we find that they are manifestly wrong, Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, when there are two conflicting views of the evidence, the factfinder’s choice between them cannot be manifestly wrong. Id.
Here, the factfinder determined that the work set out in EWA #3 was indeed work included in the original bid, and therefore that there was no consideration (i.e. additional work) to support any additional | apayment. There was certainly evidence to this effect in the testimony of Mr. Swibel, and the trial judge specifically cited that testimony in support of this finding. As to the effect of Mr. Silbernagle’s signature on the document, the trial judge implicitly found that this signature did not bind Ward to any additional payments. Again, there was ample evidence in the testimony of both Mr. Ward and Mr. Swibel to establish that the account adjustments in EWA #3 could not have been given effect until agreed to by the other affected sub-contractors, and that these other parties had refused for the most part to give that assent. Given the testimony and documentary evidence bearing on both of the above questions, we are unable to say that the findings of the trier of fact are manifestly erroneous, and therefore we are required to affirm those findings.
Concerning Ward’s appeal of the award of the retainage with interest from date of demand, we reiterate that the base amount awarded consists of the actual retain-age of $5,803.79, as well as an additional $790.00, which is the amount of the “charge-backs” agreed to by other sub-contractors in conjunction with EWA #3. There is no explanation in the record for Ward’s withholding of the latter amount, and it should therefore pay judicial interest on that amount *1209 from date of demand. As to the actual re-tainage, at the time this suit was filed Ward had not yet been paid the total retainage for the project by the school board, and thus should not be required to pay interest on funds | ipnot yet in its possession. However, once Ward was paid the final amount by the board, it had use of the funds which the trial judge properly found to be owing to Heritage under the original sub-contract, and it therefore should pay judicial interest from the time that it received those funds. We therefore affirm the award of the withheld funds, but amend the award of legal interest to provide that as to the actual retainage of $5,803.79, interest commenced on' the date those funds were paid to Ward by the school board.
For the foregoing reasons, the judgment of the district court is hereby affirmed, except that judicial interest on $5,803.79 of the re-tainage awarded shall commence upon the date that The Orleans Parish School Board paid those funds to Ward, rather than from date of judicial demand.

AMENDED AND AFFIRMED AS AMENDED.