750 So.2d 1063 (1999)
Barbara McCain, Wife of/and Melvin J. LACROUTS
v.
FUTURE ABRASIVES, INC.
No. 99-CA-583.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
Writ Denied February 11, 2000.
*1064 Stephen C. Resor, Michael M. Meunier, Gloria T. Lastra, New Orleans, for Plaintiffs-Appellees.
Brian C. Bossier, Mickal P. Adler, Metairie, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and MARION F. EDWARDS.
DUFRESNE, J.
This is an appeal by Future Abrasives, Inc., defendant-appellant, from a $20,000 judgment in favor of Melvin Lacrouts and his wife Barbara McCain, plaintiffs-appellees, *1065 in this products liability/defective warning case. For the following reasons we affirm that judgment.
The facts of the accident giving rise to this claim are not in dispute. At the time of this accident, Lacrouts had been employed by Browning-Ferris, Inc. for about four years in its equipment repair shop as a welder. He had previously worked for over twenty years in the shipbuilding industry as a welder and shipfitter. On the day in question here, Lacrouts had finished a small welding job on a street sweeper and needed to smooth out the weld. Because the site of the weld was only about six inches from the ground, he asked his assistant to give him a high speed air powered pistol grip sander which had a four and one-half inch diameter grinding wheel attached. He said that before touching it to the weld he turned the tool on briefly and the wheel immediately fragmented. A piece of the wheel imbedded in the calf of his left leg.
Lacrouts was taken to the hospital where surgery was immediately performed. Dr. John Cazale, the treating orthopedic surgeon, testified that the procedure took about an hour, and involved removing the pieces of the wheel and all other foreign materials. He said that this also required the removal of some muscle and skin tissue, after which the wound was closed and bandaged. Lacrouts was discharged the following day and deemed temporarily disabled for work.
The original surgery was on November 17, 1994, and Lacrouts was seen on weekly follow-up visits until December 12. During that time his wound healed uneventfully, except for some numbness in the leg and ankle. On that date he was approved for light duty, and apparently returned to work. He continued to be checked periodically for the next few weeks, and by January 30, 1995, had reached maximum cure. At that point he had complaints about arthritic pains in his right knee, which the doctor ascribed to his favoring his left leg and thus putting more pressure on the right. The last visit to Dr. Cazale was on May 30, 1995, at which time his only complaint was some residual numbness in his lower left leg and ankle. That was the last time he saw any doctor for the injury.
Lacrouts was 58 years old at the time of the accident. He said that he now drives a street sweeper for BFI, apparently on a full time basis, as no claim for future lost wages was urged. He did say that he can not be on his feet for long periods of time or climb ladders, and has some permanent numbness in the leg and ankle. He still plays golf, but must use a golf cart rather than walk the course as he did previously. He also has trouble cutting grass and is unable to help his wife around the house as much as he used to.
He and his wife brought the present suit against Future Abrasives, Inc., the entity which marketed the grinding wheel, on a products liability claim, alleging a defect in composition as well as a failure to properly warn of dangers in use. BFI filed an intervention to recover worker's compensation benefits paid because of the accident.
At trial, a grinding wheel identical to the one which had flown apart was produced. The wheel itself contained a number of warnings about its proper use, as follows: 1) Do not exceed 13,300 RPM's, 2) Safe to use only if mounted and operated according to ANSI safety code B7-1. Read accompanying safety folder before use, 3) Do not use without a machine guard, and 4) Wear protective goggles and clothing while grinding. There was also testimony that the box in which the wheels were sold also had a warning printed on it and the folder referred to on the wheel itself came in the same box. However, neither the box nor the safety folder were placed in evidence by either party.
Lacrouts testified that he was familiar with the warnings on the wheel and knew from prior experience that grinders should never be used without a machine guard. When he first went to work for BFI, he told his supervisor that the tool at issue here did not have a guard and should not *1066 be used that way, but nothing was ever done to correct this problem. He also testified that he had used the tool off and on for four years and had never had problems relating to lack of a guard. He indicated that because he was simply holding the tool when he did the preliminary check, rather than applying it to the work, a guard would not necessarily have prevented fragments of the wheel from striking him somewhere. He also indicated that at the time of the accident he was wearing goggles and proper clothing. He said that he did not recall the 13,300 RPM rating for the wheel and was not aware that the tool had a speed rating of 20,000 RPM's. Although he knew how the wheel had been mounted on the tool, he had not done that himself. He was not asked whether he knew what type of mounting ANSI B7-1 recommended or prohibited, nor was he asked anything about the accompanying safety folder.
Plaintiffs called as their expert Robert Lipp, a mechanical engineer. His testimony was that he had tested the tool at issue and found that although it was rated at 20,000 RPM's, he could not get it to exceed 18,500 RPM's. He noted that according to the manufacturer of the wheel, it had a burst factor of 1.8. That meant that if the wheel were properly made, it should be able to withstand speeds of 1.8 time its rated speed of 13,300 RPM's, or 23,940 RPM's. Because the tool could only reach 18,500 RPM's, he concluded that the wheel should not have failed at that speed unless it were defective.
On cross examination, he admitted that his conclusion about the wheel depended on it not being subjected to any other stresses or damage. He also admitted that he was not sure how the wheel had been mounted on the tool. As to the safety guard, he thought that the accident might have occurred even had a guard been used. This expert gave no opinion about the adequacy of the warnings appearing on the wheel.
Defendant's expert, George Reitmeier, gave a different explanation. He examined the fragmented wheel microscopically and concluded that there was no defect in its composition. He also said that it was evident that the wheel had been stressed by the way it had been mounted on the tool. He noted that ANSI B-7 clearly sets out that grinding wheels are not to be used on high speed pistol grip sanding tools because these tools generally exceed the recommended speeds for grinding wheels, they are not designed to have guards on them, and the mounting fixtures are improper for grinding wheels.
On this last point, he explained that for about the last forty years grinding wheels have been manufactured with a standard diameter hole for mounting on grinding machines. Sometime in the 1980's high speed pistol grip sanders were introduced which used a similar diameter mounting system. However, the mounting system of the sanders consists of a pair of concave flanges with a screw through them which attaches to the shaft of the tool. When a grinding wheel is mounted on this system, the outside rim of the bottom flange is against the bottom of the wheel a little out from its center, while the center part of the top flange abuts the wheel closer to the center. The result is a pressure differential on the wheel which can cause it to crack when the screw is tightened. This cracking, combined withe the excessive speed of these tools, can cause a wheel to fly apart. In this expert's opinion, this is precisely what happened here. It was also his opinion that a guard would have prevented the accident.
On further questioning Reitmeier testified that he had investigated over fifty such accidents during the last few years and indicated that the problem of mounting grinding wheels on pistol grip sanders was well known in the industry. He said that the manufacturers of these sanders were now also placing warnings about not using them with grinding wheels on the tools, and some companies had redesigned their tools so that the mountings were not compatible with the standard grinding *1067 wheel hole. As to the warnings on and accompanying the grinding wheel in this case, he said that in his opinion they complied with the applicable ANSI standards. However, as noted above, the safety folder was never placed in evidence.
After both sides rested, the trial judge stated from the bench that she deemed defendant's expert more persuasive than plaintiffs' and on the basis of the former's testimony found that the wheel was not defective. She also noted that although there was ample evidence of fault on the part of the employer, the defendant had not pled third party fault and therefore she would not assign any fault to this employer.
The judge then asked for post trial memoranda on the issue of whether defendant's evidence, or more precisely its lack of evidence, could be used to establish plaintiff's case as to a defective warning. The underlying facts prompting this question were set forth by the judge as follows. She first pointed out that although plaintiff had stated in pleadings that the warning was defective, he presented scant evidence to establish that claim. However, in the defendant's case its expert had provided ample evidence to show that a known hazard associated with grinding wheels was that they were improperly being used on pistol grip high speed sanders with predictable consequences. She noted that in spite of this known common hazard, the warning on the wheel itself did not directly contain this information, and that warning was thus insufficient to properly warn users of this danger. While she acknowledged that the wheel did make reference to ANSI B-7 and the accompanying folder, because the folder was not in evidence she was unable to determine whether this additional information cured the defect in the warning on the wheel.
After receipt of the memoranda, she ruled in plaintiffs favor. Judgment was entered for $19,772.39, which included $4,653.99 for past medicals, $1,118.40 in lost wages, $12,000.00 for pain and suffering, and $2,000.00 for the loss of consortium claim. BFI was awarded $5,399,59 from the above amount on its intervention claim for worker's compensation benefits. Future Abrasives now appeals, basically attacking the determination that the label was defective, and plaintiff cross-appeals contending that the general damages award was too low.
Future Abrasives first contests the finding that the warning was defective. This being a factual determination, the standard of review in this court is that of manifest error. Thus, we are not called upon to decide whether we would have made a similar finding had we been sitting as triers of fact, but rather whether the evidence of record taken in its entirety provides a reasonable basis for the finding actually made, Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Here, the evidence showed that the use of the grinding wheels on high speed pistol grip sanders was a common problem. The only warning in evidence did not specifically mention this danger. In our opinion, this evidence provided a reasonable basis upon which the trier of fact could find that the warning was defective, and we must therefore uphold that finding.
The defendant urges, however, that the trial judge also fell into legal error in finding that the warning was defective because to reach this conclusion she had to impermissibly reverse the burden of proof. It argues that the burden here initially rested with plaintiffs to show that the defendant did not use reasonable care in providing an adequate warning about a characteristic of the product which may cause damage, as per La. R.S. 9:2800.57. The trial judge stated that plaintiffs did not put on such evidence in its case, and the defendant asserts that this should be fatal to their case.
It is the defendant's further argument that even were its evidence of the dangers inherent in using the wheel on a high speed pistol grip sander to be used against it, plaintiffs should still not prevail. This *1068 is so, it asserts, because the warning on the wheel stated that ANSI B-7 should be observed and further instructed the user to read the enclosed safety pamphlet.
Although the pamphlet was not in evidence, defendant contends that the trial judge erred in finding that the entire warning package was defective by making a presumption that the information in the pamphlet did not cure any shortcomings in the wheel warning. It asserts that because plaintiffs failed to introduce the pamphlet so as to establish this alleged inadequacy, the trial judge was not free to presume this inadequacy, but rather must instead have found that plaintiffs did not bear their burden of showing that more probably than not the pamphlet did not warn against using the wheel on high speed pistol grip sanders. Its argument, in effect, is that if a mere speculation had to be made about the contents of the pamphlet, that speculation should have been made against the party bearing the burden of proof on the issue.
While this argument appears well founded, on further analysis it must fail. The record shows that plaintiffs did put on some evidence concerning the adequacy of the warnings on the wheel. Lacrouts testified that he saw the label on the wheel, and knew that it should only be used on a tool with a safety guard. However, nothing in the warning alerted him to the fact that it was the mounting apparatus on the high speed sander that created the danger of cracking the wheel. When defendant's expert testified, he explained in detail why this mounting was problematical and further showed that use of the wheels on these types of sanders was an industry-wide problem.
On those showings, a prima facie case in plaintiffs' favor had been made that a warning about this specific danger should have been provided and that the label on the wheel did not on its face give such a direct warning. At that point, it was incumbent on defendant to go forward with evidence to show that the pamphlet to which the wheel warning referred did indeed warn against using it on the high speed sanders. This it did not do. It was thus not that the trier of fact speculated or made a presumption in plaintiffs' favor; it was rather that once it was shown that a more specific warning was called for, defendant did not go forward with evidence to show that it had provided such a warning. We therefore reject this assignment of error.
The defendant next argues that it was error for the trial court not to consider the fault of the third party employer in the accident. It first urges in this regard that although admittedly Lacrouts did not have the advantage of the safety folder, the employer did. It argues that the warnings should be analyzed on their content when they left the manufacturer and perhaps when they were received by the employer, but not on the basis of what warnings Lacrouts actually received. This argument brings up the previous evidentiary problem. It makes no difference here at what point the warnings are analyzed. The fact is that the evidence as a whole reasonably supports the conclusion that the wheel warning was defective because it did not specifically warn of the dangers of use on high speed sanders. The defendant's failure to introduce the pamphlet to show that it cured this defect as to Lacrouts, similarly defeats its use to show that it cured the defect as to the employer.
Alternatively, defendant argues that the fault of the employer should have been calculated to reduce the fault of the defendant. While it is true that the trial judge gave the wrong reasons for not considering employer fault, the determination was nonetheless correct. Pleadings are considered as enlarged by introduction of evidence which is not objected to by the opposing party, and this enlargement includes affirmative defenses, Heritage Intern. Decorating Services, Inc. v. T.J. Ward General Contractor, Inc., 94-517 (La.App. 5th Cir.11/29/94), 646 So.2d 1205. Here, evidence of employer fault was so *1069 introduced and the pleadings were so enlarged. However, in 1994, when the present accident occurred, the applicable law precluded quantification of employer fault in third party tort actions, Cavalier v. Hydrostatic Testing, Inc., 94-1496 (La.6/30/95), 657 So.2d 975. Although La. Civ.Code, Arts. 2323 and 2324, and La. R.S. 23:1104 were amended in 1996, it is not clear that these amendments have changed the rule of Cavalier, supra, except that it now appears that the employer's right to recover benefits paid is to be reduced by its percentage of comparative fault. Regardless of what those amendments now provide, it has now been determined that the changes to Article 2324, relating to the apportionment of liability for payment of damages, is substantive and may only be given prospective effect, Aucoin v. State Through Dept. of Transp. and Development, 97-1967 (La.4/24/98), 712 So.2d 62. Because the present accident predates the above amendments, the matter is still controlled by the rule of Cavalier, supra. Thus, the trial judge's decision not to quantify the fault of the employer was correct.
Plaintiffs on cross appeal seek an increase in the awards of $12,000 for pain and suffering, and $2,000 for loss of consortium. The standard of review of general damage awards is whether the judge or jury abused their much discretion in fixing the awards. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), the court reiterated the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact. Further, it is only when the appellate court determines, for articulable reasons, and considering the particular injuries to the particular plaintiff in his particular circumstances, that the judge or jury have abused their much discretion that it may set aside an award as too high or too low. In the present matter, we have reviewed the awards complained of according to the above criteria, but are unable to articulate any reasons why the trial judge abused her discretion in fixing these awards. We therefore must affirm them.
For the foregoing reasons, the judgment of the district court in this matter is hereby affirmed.
AFFIRMED.
EDWARDS J., concurs with reasons.
EDWARDS, J., Concurring with Reasons.
I respectfully concur with the Court's affirmation of the trial court's ruling, but would increase the amount of damages awarded to Mr. and Mrs. Lacrouts. The trial court awarded $12,000.00 for Mr. Lacrouts' pain and suffering. It is my opinion that this amount should be increased to $50,000,00. The trial court awarded $2,000.00 for Mrs. Lacrouts' loss of consortium. It is my opinion that this amount should be increased to $5,000.00. Because the damages awarded by the trial court are not abusively low, I concur with the majority and would affirm the judgment.