EDWIN A. LOMBARD, Judge.
|, The Appellants, Kyle and Christine Smith (“the Smiths”), seek review of two district court judgments: a September 8, 2014 judgment granting an injunction in favor of the Appellees, Lakewood Property Owners Association (“LPOA”)[1] and Mark Samuels (“Mr. Samuels”); and a December 16, 2014 judgment granting the Appellees’ costs in the amount of $3,960. Furthermore, the Appellees have filed an Answer to the Appeal asserting that the amount of costs awarded to them should be increased. Finding that the district court did not err in granting injunctive relief to the Appellees, we affirm. However, we reverse the district court’s judgment ordering the demolition of the Smiths’ carport and remand for further proceedings as set forth herein. The Answer to the Appeal is denied.
Facts and Procedural History
In 2006, the Smiths purchased a home located in New Orleans at 5269 Marcia Ave. in the Lakewood subdivision. Their home is adjacent to 5301 Marcia Ave., which is owned by Mr. Samuels. Both properties are specifically located in j^Lakewood South, Section Two.[2] The *783 Smiths planned to construct a carport attached to their home and located near the side property line bounding Mr. Samuels’ property.
. The Appellees learned of the Smiths’ carport construction plans by receiving a notice from the Zoning Board of the City of New Orleans explaining that the Smiths wanted to construct a carport that would be located within three inches of the side property line and that their request for a variance needed to be approved by the Board, of Zoning Adjustments. The Ap-pellees objected to the Smiths’ request for a variance. Furthermore, the Appellees advised' the Smiths that the Building Restrictions for Lakewood South, Section Two, (“Building Restrictions”) were applicable to their plans, which the Appellees stated needed to be submitted to the LPOA’s Architectural Control Committee for approval. The Smiths’ variance request was ultimately denied without prejudice by the City of New Orleans.
The Smiths contacted A1 Ledner, a person allegedly designated on the LPOA website at that .time as their architectural point person. The Smiths contend that Mr. Ledner approved their plans. However, this is contested by the LPOA. Eventually, in July 2007, Juli Echols, the LPOA’s Architectural Control Committee chair, and the Smiths began communicating. The LPOA’s Architectural Control Committee reviewed the carport plans and advised the Smiths via correspondence dated August 28, 2007, that their plans were non-compliant with the Building Restrictions. The Smiths’ plans were rejected because their proposed [^attached carport was going to be located within five feet from the side property line between the Smiths’ and'Mr. Samuels’ properties, which was in violation of Restriction 4[3] of the Building Restrictions requiring such a structure to be at least five feet from the property line.
Following two months of communicating with the. LPOA’s Architectural Control Committee — later renamed the Architectural Review Committee . (“ARC”) — regarding the carport’s construction, the Smiths resolved to construct their carport without ARC approval: They began construction in early Octpber 2007.
Thereafter, on October 16, 2007, the Ap-pellees sued the Smiths seeking mandatory 'and prohibitive injunctive relief. • The Appellees sought the enforcement of certain portions of the Building Restrictions and the removal of the Smiths’ carport. Mr. Samuels further sought damages un *784 der various theories due to the location of the carport relative to his home.
|4The Smiths filed several exceptions to the lawsuit, including an Exception of No Right of Action. The Smiths additionally filed Exceptions of No Cause of Action, Vagueness and Ambiguity against Mr. Samuels. Furthermore, the Smiths filed a Motion for Summary Judgment requesting dismissal of the Appellees’ lawsuit on the grounds that the: 1) the Building Restrictions were abandoned as a matter of law; 2) Mr. Samuels was precluded from filing suit against them under the unclean hands doctrine because the carport on his property has the same side lot line violation he seeks to enforce against the Smiths; 3) the Appellees were not authorized to approve, disapprove, or enforce the restrictions at issue; and 4) Mr. Samuels was not entitled damages under any theory.
The district court granted the Smiths’ Exceptions of No Cause of Action and Vagueness, but denied their Exception of No Right of Action and Motion for Summary Judgment. Thereafter, the Appel-lees filed their Second Amended Petition, which the Smiths answered and raised affirmative defenses of abandonment of the Building Restrictions and the unclean hands of Mr. Samuels. The Appellees later filed a Motion for Partial Summary Judgment to limit the Smiths’ defense to only abandonment of the side lot line restriction, and to preclude raising the defense that the entire restrictive plan was abandoned. The district court granted the Motion for Partial Summary Judgment.
A two-day trial was held in mid-July 2014, on the issues of: 1) abandonment of the side lot line restriction; 2) the unclean hands of Mr. Samuels, and 3) Mr. Samuels’ damages claim. The district court granted the Appellees’ injunctive relief and awarded them costs in its September 8, 2014 judgment. The Smiths were ordered to remove their carport. Lastly, the district court denied Mr. Samuels’ damages claim.
IsThe Smiths later filed a Motion for New Trial, which the district court denied. Thereafter, the Smiths timely filed their suspensive appeal of the September 8, 2014. The district court, on December 16, 2014, granted in part and denied in part the Motion to Tax Costs of the Appellees, awarding them $3,960 in costs. The Smiths timely suspensively appealed the December 16, 2014 judgment, and moved to consolidate the two appeals. Following our consolidation of the appeals, bearing Docket Nos. 2014-CA-1376 and 2015-CA-0178, on February 27, 2015, the Appellees filed an Answer to the Appeal asserting that their award of costs should be increased.
The Smiths raise six (6) assignments of error on appeal:
1. The district court committed legal error when it denied the Smiths’ Exception of No Right of Action;
2. The district court committed legal error when it denied the Smiths’ Motion for Summary Judgment to dismiss the lawsuit based on abandonment and the unclean hands of Mr. Samuels;
3. The district court committed legal error when it granted summary judgment to limit the Smiths’ affirmative defense regarding general abandonment of the entire restrictive plan;
4. The district court committed legal error when it misapplied the law to stipulated facts and unrebutted evidence proving the restrictions were abandoned for non-enforcement and that Mr. Samuels had unclean hands;
5. The district court committed legal error when it ordered the Smiths to *785 tear down their entire carport when less drastic measures were available to achieve compliance with the Building Restrictions; and
6. The district court erred in awarding costs to the Appellees.
| ^Exception of No Right of Action
The Smiths assert that the district court committed a legal error when it denied their Exception of No Right of Action challenging the LPOA’s legal interest in this matter because it is not a party to the Building Restrictions. According to the Smiths, the Building Restrictions for Lakewood South, Section Two, are clear and unambiguous in that the LPOA is not mentioned therein. They contend that the sole legal obligation created by the Building Restrictions is between the purchasers of lots and the Architectural Control Committee created by the Building Restrictions[4] (“the ACC”), which solely has the authority to approve, disapprove, enforce, or accept by waiver and inaction the plans of any lot owners.
They contend that the LPOA is not the ACC’s legal successor; thus, it is precluded from assuming the rights and obligations of the ACC. Only the ACC created and authorized by the Building Restrictions, they argue, had authority to review their plans. The ARC is not a successor to the ACC, but it is a committee appointed by the LPOA, its board and/or officers. There is nothing in the LPOA’s Articles of Incorporation authorizing the LPOA to enforce the Building Restrictions, argue the Smiths.
The Smiths rely on the testimony of Ms. Echols, wherein she stated that at the time she wrote the Smiths she did not know whether she was acting on behalf of the ACC. They further assert that Ms. Echols admitted that the LPOA, its board, and its committees, are not the same as the ACC, which is charged with and empowered to approve plans and enforce the Building Restrictions. The Smiths argue that this admission was dispositive of this action under the rules of strict | ./interpretation; yet, the case was allowed to proceed. The Smiths aver that these legal deficiencies are incurable; therefore, their exception should have been granted and the action dismissed, pursuant to La. Code Civ. Proc. art. 934 and Johnson v. Orleans Parish Sch. Bd., 03-0828 (La.App. 4, Cir. 11/3/04), 890 So.2d 579.
“The peremptory exception of no right of action questions whether plaintiff has an interest in judicially enforcing the right alleged against the defendant.” Stewart Interior Contractors, L.L.C. v. MetalPro Indus., L.L.C., 13-0922, p. 3 (La.App. 4 Cir. 1/8/14), 130 So.3d 485, 488 [subsequent history omitted]. “In considering the exception, the court must decide whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. It raises neither the question of plaintiff’s ability to prevail on the merits nor whether defendant may have a valid defense.” Id., 13-0922 at pp. 3-4, 130 So.3d at 488 [citations omitted]. The exception of no right of action presents a question of law, which requires a de novo review by appellate courts. Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798. The standard of review for an appellate court is simply whether the trial court’s interpretative decision is legally correct. Hospitality Con *786 sultants, LLC v. Angeron, 09-1738, p. 6 (La.App. 4 Cir. 6/9/10), 41 So.3d 1236, 1240 [citation omitted].
Pursuant to our de novo review, we find that the district court’s denial of the Smiths’ Exception of No Right of Action is legally' correct. Building restrictions are sui geneñs real rights. La. Civ. Code art. 777; Lakeshore Prop. Owners Ass’n, Inc. v. Delatte, 579 So.2d 1039, 1044 (La.App. 4th Cir.1991) writ denied, 586 So.2d 560 (La.1991). Individual landowners, such as Mr. Samuels, have the right |sto bring an action to enjoin another landowner, within their subdivision, from violating the subdivision’s building restrictions. Id. at 1044;[5] La. Civ. Code art. 779 and Comments (b) and (d) thereto. Similarly, the Louisiana Supreme Court has held that homeowners associations also have the procedural capacity to seek in-junctive relief because they are composed of property owners and residents of the subdivision. Id. at 1044. Consequently, in the instant matter, we find that the LPOA has a legal interest in the subject matter of this litigation. This assignment of error is without merit.
The Smiths’ Motion for Summary Judgment
In their second assignment of error,.the Smiths seek review of the district court’s denial, of their Motion for Summary Judgment on four (4) issues: . 1) general abandonment of all of the Building Restrictions; 2) the abandonment of the side lot line restriction (“Restriction 4”); 3) the compliance of their carport with Restriction 4; and 4) the alleged unclean hands of Mr. Samuels.
However, two of these issues, the abandonment of Restriction 4 and Mr. Samuels’ alleged unclean hands, have been tried and judgment was rendered on the merits in favor of the Appellees. Therefore, the heed to review the denial of the Smiths’ Motion for Summary Judgment on ■these issues is now moot. Heritage Int’l Decorating Servs., Inc. v. T.J. Ward Gen. Contractor, Inc., 94-517, p. 6 (La.App. 5 Cir. 11/29/94), 646 So.2d 1205, 1207. See also Black v. J.I. Case Co., 22 F.3d 568, 570 (5th Cir.1994) [holding that the appellate court would not review the pretrial denial of a motion for summary judgment where, on the basis of a | subsequent full trial on the merits, final judgment is entered adverse to the movant]. Therefore, we will address the Smiths’ arguments involving those issues in our discussion of their fourth assignment of error.
Regarding the Smiths’ argument that the district court erred in denying their Motion for Summary Judgment on the issue of general abandonment of the Building Restrictions as a whole, they contend that they submitted proof to the district court that the ACC ceased to exist. The district court erred, the Smiths argue, in denying their Motion for Summary Judgment because the entire restrictive plan was abandoned when the ACC ceased to exist.[6]
 Abandonment occurs when there is a subversion of the original scheme of development that results in substantial change in the intentions of the developer. *787 Robinson v. Donnell, 374 So.2d 691, 693-94 (La.App. 1st Cir.1979), writ denied, 375 So.2d 958 (La.1979). The Smiths maintain that a total subversion of the restriction regime occurred when the ACC ceased to exist because its existence is integral to the operation of the entire restrictive plan.[7] They aver that they should have been permitted to introduce proof at trial regarding the failure of the LPOA to enforce the Building Restrictions because the ACC was nonexistent.
A motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. Code Civ. Proc. art. 966. On appeal, motions for summary judgment are reviewed de novo using the same |incriteria that govern the trial court’s consideration of whether summary judgment is appropriate. Johnson v. Williams, 14-0903, p. 3 (La.App. 4 Cir. 2/4/15), 160 So.3d 1036, 1038 (citing Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638). This Court views “the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-mov-ant.” Kovach v. Hancock Bank of Louisiana, 14-0981, p. 3 (La.App. 4 Cir. 5/6/15), 164 So.3d 436, 439, reh’g denied (5/27/15) (citing Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765).
The burden of proof remains with the movant; however, “if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for.one or more elements essential to the adverse party’s claim, action, or defense.” La. Code Civ. Proc. art. 966(C)(2). “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.
Article 782 of the Louisiana Civil Code provides that “[bjuilding restrictions terminate by abandonment of .the whole plan or by a general abandonment of a particular'restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.” Furthermore, La. Civ. Code art. 782 Comment (b) provides in pertinent part:
Abandonment of the entire restrictive plan is ordinarily predicated on a great number of violations of all or most restrictions. Upon abandonment of the entire plan all | ^restrictions fall, and the use of the property is free for all purposes.
Pursuant to La. Civ. Code art. 782 and Louisiana.jurisprudence, a finding of the abandonment of the entire restrictive plan is primarily predicated on the numer-osity of violations of all or most of the building restrictions. Once a plaintiff seeking an injunction has established a violation of a restriction, the burden shifts to the defendant to prove the termination or abandonment of that restriction. Lake- *788 shore Prop. Owners Ass’n, Inc., 524 So.2d at 129.
The parties stipulated that the Smiths’ carport is supported by columns that are located “within five feet of the adjacent interior line of the property.” This is a violation of Restriction 4. Therefore, once it was established that the Smiths had violated a restriction, they had to produce factual support sufficient to show that they would be able to prove abandonment of all the Building Restrictions.
The Smiths, however, offer no legal support for the assertion that the Building Restrictions can be deemed totally abandoned because of the ACC’s dissolution, which is not a factor in the jurisprudential standards for determining the abandonment of such restrictions. Moreover, as the Appellees note, this particular argument was not raised before the district court in the Smiths’ Motion for Summary Judgment. ' Appellate ' courts generally find it inappropriate to consider an issue raised for the first time on appeal that was not pled, urged, or addressed in the court below. Graubarth v. French Mkt. Corp., 07-0416, p. 5 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 664 [citation omitted]. The Smiths have not demonstrated that they were entitled to summary judgment based upon this argument.
haLastly, the Smiths assert that every aspect of their carport is in compliance with the Building Restrictions, with the exception of six side-columns. Considering their admission that a portion of the carport is non-compliant with Restriction 4;’we do not find that this argument has merit.
Granting of the Appellees’ Motion for Summary Judgment
The Smiths aver that the district court committed a legal error when it granted the Appellees’ Motion for Summary Judgment thereby limiting their affirmative defense regarding general abandonment of the Building Restrictions. The district court erred, the Smiths argue, in granting the Appellees’ motion because the entire restrictive plan was abandoned when the ACC ceased to exist. We pretermit discussion of this issue having explained in the previous assignment of error that this argument is without merit.'
Misapplication of the Law as to the Abandonment for Non-Enforcement and the “Unclean Hands” Doctrine
In their fourth assignment of error, the Smiths argue, that the district court made erroneous legal conclusions, erred in determining that Restriction 4 was not abandoned and erred in failing to find that Mr. Samuels’ claims were barred under the unclean hands doctrine.
Regarding findings of fact, the proper standard of review is whether the trial court made a factual finding that was manifestly erroneous or clearly wrong. Hijazi v. Dentler, 13-268, p. 5 (La.App. 3 Cir. 11/6/13), 125 So.3d 1280, 1284 (citing Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782, cert. denied, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000)). The reviewing court must review the record in its entirety to make this determination. Id. (citing Stobart v. State, DOTD, 617 So.2d 880 (La.1993)). Even though an appellate court may feel its own | ^evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. [citation omitted]. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. [citation omitted].
While a reviewing court defers to a trial court’s reasonable decision on a question *789 or matter properly -within the trial court’s discretion, if the trial court’s decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. Id. (isiting Kern, Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983)). “[I]f the trial court makes a legal error that interdicts the fact-finding process, the appellate court must conduct a de novo review of the record.” 1100 S. Jefferson Davis Parkway, LLC v. Williams, 14-1326, p. 3 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1215, reh’g denied (6/3/15) [citations omitted].
a. Erroneous Legal Conclusions
The Smiths assert that the conclusions of law reached by the district court constitute legal error, which we should reverse, because the district court reached erroneous legal conclusions regarding the nature and identity of the parties under the Building Restrictions. The district court did not resolve the issue as to whether the LPOA’s ARC is distinct, from the ACC created by the Building Restrictions. The district court also did not address, they argue, how the ARC could assume the rights and duties of the ACC, to whom the owners delegated approval authority. They further aver that the district court erred in determining that the ARC is charged with reviewing property owners’ plans for construction and renovation to ensure that plans are in compliance with the applicable Building Restrictions. The [ ucourt also erroneously held that the Building Restrictions required that all architectural plans be submitted for the LPOA’s ARC for review and approval.
This argument, however, has no bearing on whether the Smiths proved that Restriction 4 was abandoned. We have previously concluded that the LPOA had the right to enforce the Building Restrictions. If the district court did err in making determinations regarding the authority of ARC in this matter, such an error would be harmless. This is because the ARC’S involvement is not germane to the Smiths’ failure to adhere to the Building Restrictions and whether the Smiths proved the abandonment of Restriction 4.
b. Abandonment
In relation to the abandonment of Restriction 4, the Smiths assert that the district court mistakenly considered the number of alleged violations submitted by the Smiths in ratio to all 238 properties in Lakewood South instead of considering the number of violations actually governed by the Building Restrictions of Lakewood South, Section Two, which is composed of 75 properties.[8]
Additionally, they argue that the district court did not fully consider Mr. Smith’s testimony of his personal knowledge and observations of 21 alleged violations of the Building Restrictions. The Smiths challenge the district court’s determination that Mr. Smith’s photographs of violations of restrictions were assigned “little weight” because it found: 1) he was not an expert surveyor designated by the Court; 2) his photographs did not show exact measurements; and 3) the probative evidence from the photographs was reduced because Mr. Smith | ^“improperly” walked onto some properties to take measurements. They assert that the district court’s decision to discount the probative value of Mr. Smith’s photos was unfounded, and that they carried their burden of proof by a preponderance of evidence. The Appellees, they argue, did not intro *790 duce evidence that they reviewed or evaluated the properties identified by Mr. Smith, and the district court’s reasons do not address the Appellees’ failure to rebut the Smiths’ evidence.
As stated above, pursuant to La. Civ. Code art. 782, building restrictions terminate by abandonment of the entire restrictive plan or by a general abandonment of a particular restriction. The Smiths’ abandonment defense at trial was limited to whether Restriction 4 was abandoned. We also previously addressed that the burden of proving abandonment shifted to the Smiths once the Appellees established that the Smiths violated Restriction 4. Lakeshore Prop. Owners Ass’n, Inc., 524 So.2d at 129.
“Abandonment of a particular restriction is ordinarily predicated on a great number of violations of that restriction in relation to the number of lots affected by it.” Lakeshore Prop. Owners Ass’n, Inc., 579 So.2d at 1043 [citations omitted]. “When the violations are sufficient in number to warrant the conclusion that a particular restriction has been abandoned, the property is freed from that restriction only.” Yiannopoulos, 4 La. Civ. L. Treatise; Predial Servitudes, § 10.8 (1983). Our Court further explained that a determination of whether a restriction has been abandoned is made on a case by case basis:
Whether a general waiver or relinquishment of a restriction has occurred by common consent or universal acquiescence, depends upon the facts of each case. Edwards v. Wiseman, supra [198 La. 382, 3 So.2d 661 (1941)]. Where violations are general or have been universal without protest, so as to substantially defeat the object of the general scheme or purpose of the building 1 ^restrictions, the restriction is considered waived or relinquished and cannot subsequently be enforced. See Id.; An tis v. Miller, 524 So.2d 71 (La.App. 3d Cir.1988); Marquess v. Bamburg, supra; Robinson v. Donnell, 374 So.2d 691 (La.App. 1st Cir.1979), writ den., 375 So.2d 958 (La.1979); Cook v. Hoover, 428 So.2d 836 (La.App. 5th Cir.1983).
Whether acquiescence to violations is sufficient to cause abandonment of a restriction depends upon the character, materiality and number of the violations and their proximity to the objecting residents. Guyton v. Yancey, supra; Gwatney v. Miller, 371 So.2d 1355 (La.App. 3d Cir.1979); Ritter v. Fabacher, 517 So.2d 914 (La.App. 3d Cir.1987); East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App. 1st Cir.1976), writ den., 338 So.2d 699 (La.1976). When frequent and substantial violations of a restriction pass without objection, the restriction is regarded as abandoned if the property owner against whom abandonment is asserted knew, should have known or had a duty to know of the alleged violation. East Parker Properties, Inc. v. Pelican Realty Co., supra. See also Lakeshore Property Owners Ass’n v. Delatte, supra. Insubstantial, technical or infrequent violations of a restriction, which are not subversive to the general plan or scheme, weigh little towards establishing an abandonment. Id.; Guyton v. Yancey, supra; Marquess v. Bamburg, supra; Cook v. Hoover, supra; Gwatney v. Miller, supra; Antis v. Miller, supra.
Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. LSA-C.C. art. 783; Camelot Citizens Ass’n v. Stevens, supra; Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947).
Lakeshore Prop. Owners Ass’n, Inc., 579 So.2d at 1043.
*791 The Court determines materiality by reference to “what the subdivides intended the scheme or plan to be,” and then it must “inquire into alleged violations to determine whether the plan has been disrupted.” Chambless v. Parker, 38,276, p. 8 (La.App. 2 Cir. 3/3/04), 867 So.2d 974, 979. Building, restriction violations are material when they substantially defeat the object of the general [17scheme or purpose of the building restrictions. Lakeshore Prop. Owners Ass’n, Inc., 579 So.2d at 1043.
The Smiths’ arguments relate primarily to the numerosity factor of abandonment determinations. In the instant matter, the parties stipulated to two facts specifically related to the “defense of abandonment”:
• there are 238 lots in Lakewood South, and 97 lots in Lakewood North that are contained in the four sets of Lakewood’s Building Restrictions; and
• there are 75 lots in Lakewood South, Section Two that are contained in Section Two’s Building Restrictions.
The parties further stipulated to the fact that, in addition to the Smiths and Mr. Samuels, seven (7) other properties in Lakewood South that either have attached carports or garages with support columns or walls located within five feet of the interior lot line are:
1. 5300 Marcia Ave. — Section Two
2. 5445 Bellaire Dr. — Section Two
3. 5478 Dayna Ct. — Section Two
4. 5544 Jacqueline Court — Section One
5. 5511 Cherlyn Drive — Section One
6. 5501 Marcia Ave. — Section One
7. 329 Country Club Dr, — Section One
As stated above, the number of violations of a particular restriction are to be considered in relation to the number of lots affected - by that restriction. The building restrictions among the various sections of Lakewood are basically identical. Additionally, the record shows that the Smiths relied upon violations of-Restriction 4 in other sections of Lakewood South to bolster their claims of abandonment, most notably in the joint stipulation citing violations in Lakewood South, Section One, cited, above. However, assuming that the district court should have only considered the four (4) violations of Restriction 4 within Lakewood | lsSouth, Section Two, including Mr. Samuels’ property, only 5.3% of the 75 properties within Lakewood South, Section Two, are in violation of Restriction 4. This is a miniscule percentage. Moreover, even the seven (7) stipulated violations,, plus Mr. Samuels’ property, amount to less than a 4% violation rate out of the 238 properties in Lakewood South. As the district court noted, there is .no precedent for finding such a minimal percentage to be sufficient for establishing abandonment of a building restriction.
The Smiths asserted that in addition to the stipulated, properties, .there were 21 properties located in Lakewood South that violated Restriction 4. Mr. Smith took pictures of these properties, which were admitted at trial. The Smiths urged that these photographs accurately depicted Restriction 4 violations, and Mr. Smith testified to the alleged violations depicted at trial. Nevertheless, the district court, held that these photographs had little evidentia-ry value, required speculation, and did not prove Restriction 4 violations.
We find no error in the district court’s assignment of little weight to Mr. Smith’s testimony, considering that he is not a surveyor, and- the photographs admitted into evidence require speculation as to measurements indicating violations of Restriction 4. See East Parker Properties, *792 Inc., 335 So.2d at 474. Moreover, even if the 21 properties were added to the eight (8) properties discussed above, this would only increase the violation rate to 12% out of the 238 properties in Lakewood South.
In light of the above, the Smiths’ argument for abandonment fails on the number of violations alone. Furthermore, in examining whether the violations have been general or universal without protest, to substantially defeat the object of the general scheme or purpose of the building restrictions, the LPOA asserted that l19they never acquiesced to violations of Restriction 4, but could not afford filing suit against violators who would not comply. They also asserted that they approached some violating owners to discuss the violations. Additionally, considering the low percentage of violations, it cannot be argued that frequent and substantial violations of Restriction 4 passed without objection to be regarded as abandoned.
The district court did not err in rejecting the Smiths’ abandonment argument as they did not carry their burden of proof by a preponderance of the evidence. Therefore, we find that this assignment of error is without merit.
c. Unclean Hands of Mr. Samuels
The Smiths maintain that the unclean hands doctrine defeats Mr. Samuels’ claim against them. The clean hands doctrine, also referred to as the unclean hands doctrine, is recognized as a defense in Louisiana. Allvend, Inc. v. Payphone Commissions Co., 00-0661, p. 6 (La.App. 4 Cir. 5/23/01), 804 So.2d 27, 30. “A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part.” Id. (citing Guillie v. Comprehensive Addict. Programs, 98-2605, p. 8 (La. App. 4 Cir. 4/21/99, 735 So.2d 775, 779).
The parties stipulated that the support columns of Mr. Samuels’ carport are within five feet of the interior lot line, which is a violation of Restriction 4. The Smiths contend that because Mr. Samuels’ ancestor in title violated Restriction 4, he is precluded from suing to enforce the same restriction and seeking injunctive relief. The Supreme Court, the Smiths aver, has held that the unclean hands doctrine applies to building restriction cases. Guyton v. Yancey, 240 La. 794, 809-810, 125 So.2d 365, 371 (La.1961). The Smiths argue that the district court’s finding that Mr. Samuels’ carport violation is minor and insubstantial isj^inconsistent with its determination that the Smiths’ carport is in violation of the Building Restrictions because their carport is farther away from the side lot line than Mr. Samuels’ carport.
An affirmative defense raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action. Allvend, Inc., 00-0661, p. 5, 804 So.2d 27, 30 [citations omitted]. Our Court further explained:
An affirmative defense is one that will have an effect of defeating a suit on its merits. Walters v. Metropolitan Erection Co., 94-0162, 94-0475 (La.App. 4 Cir. 10/27/94), 644 So.2d 1143, writs denied 94-2858 & 94-2870 (La.2/9/95), 649 So.2d 420. The party pleading an affirmative defense has the burden of proving it by a preponderance of the evidence. Abadie v. Markey, 97-684 (La.App. 5 Cir. 3/11/98), 710 So.2d 327.
Id., 00-0661, pp. 5-6, 804 So.2d at 30.
Our court has explained that the unclean hands doctrine “denies recovery because courts do not want to aid plaintiffs whose causes of action are based on their own illegal conduct. This would condone and encourage wrongdoing, and allow persons of immoral conscious to profit from *793 their lack of respect for the law.” Guillie, 98-2605, p. 8, 735 So.2d at 779. “The court must apply the rule not because it is a matter of defense, but because it is against public policy to hear the case if the unconscionable character of the matter or transaction be established.” Cole v. Mitchell, 46,546, p. 7 (La.App. 2 Cir. 9/21/11), 73 So.3d 452, 457, writ denied, 11-2319 (La.12/16/11), 76 So.3d 1205 (citing Rhodes v. Miller, 189 La. 288, 297, 179 So. 430, 432 (La.1938)). “The court acts for its own protection rather than for the protection of the defendant.” Id.
In the instant matter, as the district court explained, the focus of this doctrine is on precluding the person who acted in violation of the law from enforcing the 12ilaw for their own benefit. It is undisputed that Mr. Samuels did not construct the violating carport. Moreover, the Smiths cite no legal authority to support their argument that the actions of Mr. Samuels’ ancestor in title can be imputed to him for purposes of the application of the unclean hands doctrine. We do not find that the district court erred by holding that the unclean hands doctrine was inapplicable.
Furthermore, we note that Section 18 of the Restrictions, entitled Severability and Contingencies, provides in pertinent part:
The non-enforcement of these restrictions as to one or more persons shall not be construed as a waiver thereof nor shall such action be used as an estoppel against any owner of the property ... in enforcing the restriction against other persons governed thereby.
The Building Restrictions clearly provide that Mr. Samuels is not precluded from enforcing the Building Restrictions against the Smiths even though the Building Restrictions were not enforced against him. Therefore, he cannot be estopped from seeking injunctive relief to enforce the provisions of Restriction 4 against the Smiths. For the foregoing reasons, we find that this assignment of error is without merit.
Carport Removal
The Smiths’ fifth assignment of error is that the district court committed legal error when it ordered them to demolish their carport because less drastic measures were available to achieve compliance with Restriction 4. The extraordinary remedy of injunctive relief will not be granted if, as a result thereof, no real meaningful or useful purpose would be served. Deshotels v. Fruge, 364 So.2d 258, 262-63 (La.App. 3d Cir.1978), writ denied, 367 So.2d 388 (La.1979). “When a technical violation of a restrictive type of obligation does not defeat the | ^purpose or object of the covenant or obligation, such violation will be disregarded as immaterial to the issue.” Id.
They maintain that the drastic relief of ordering the demolition of the carport over a minor, technical violation is contrary to law and should be reversed. Restriction 4, they contend, allows the eaves of a building to extend up to the property line of the neighbor’s property, as long as they do not cross the property line. The Smiths aver that the height of their carport and the location of the carport roof are legal under the restrictions. Consequently, the only aspect of their carport that might violate the Restriction 4 is the location of the support columns. By relocating the support columns inward by two feet, the Smiths believe their carport would be compliant.
In its Reasons for Judgment, the district court explained that it interpreted La. Civ. Code art'. 779 as providing for the removal of objectionable structures:
Louisiana Civil Code art. 779 specifically provides that a mandatory injunction may issue to force violators of building restrictions to remove objectionable *794 structures. See also Comment (d) (citing Gerde v. Simonson Investments, Inc., 251 La., 893, 207 So.2d 360 (1968); Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (1947)). Because there are no less drastic remedies available to force compliance with the building restrictions, the Court orders that Mr. Smith must remove the carport located at 5269 Marcia Avenue.
La. Civ. Code art. 779 states that “[b]uilding restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of Article 3601 of the' Code of Civil Procedure.” Article 779 does not specifically provide that a mandatory injunction requires the removal of an objectionable structure. Comment (d) of La. Civ. Code art. 779 does, as the district court references, state l^that mandatory injunctions may issue for violators to “be forced to cease activities in contravention of the restrictions or to remove objectionable structures.” We note, however, that comments to Civil Code articles do not constitute law. Sims v. Am. Ins. Co., 12-0204, p. 6 (La.10/16/12), 101 So.3d 1, 5 [citations omitted].
Professor A.N. Yiannopoulos notes that in injunction matters involving building restrictions “[e]ourts may fashion equitable remedies.” Yiannopoulos, 4 La. Civ. L. Treatise; Predial Servitudes, - § 10:4 (1983). For instance in Honeycutt v. Brookings, 43,605, p. 4 (La.App. 2 Cir. 10/1/08), 996 So.2d 553, 556, residential neighbors of a veterinarian sought injunc-tive and declaratory relief alleging the veterinarian violated the use restrictions of their subdivision’s protective covenants because of the veterinarian’s use of a newly constructed outbuilding/kennel to house her 13 dogs. The trial court held that the veterinarian’s use of the outbuilding/kennel violated the use restrictions. Id. Nevertheless, instead of ordering the outbuilding/kennel demolished, the district court ordered the veterinarian to house her dogs inside her residence and to dismantle the dog runs from the outbuilding/kennel. Id, The Second Circuit upheld this equitable remedy on appeal. Id., 43,605 at p. 12, 996 So.2d at 560; see also Yiannopoulos, 4 La. Civ. L. Treatise; Predial Servitudes, § 10:4 (1983).
Moreover, in Seal v. Dunham, 02-0197, pp. 6-7 (La.App. 1 Cir. 12/20/02), 836 So.2d 374, 379, the First Circuit determined that if Á structure that was non-compliant with a building restriction could be made compliant, that would be preferable to' ordering the removal of the structure. The First Circuit, relying on Travasos v. Stoma, 95-1568, p. 8 (La.App. 3 Cir. 4/3/96), 672 So.2d 1070, 1074-1075, remanded the issue to the district court to determine whether the structure could be brought into compliance.
^Considering the holdings above and pursuant to La. Code Civ. Proc. art. 2164,[9] we find that, if the existing carport structure can be made compliant with Restriction 4, its' demolition is not necessary. Therefore, we remand this matter for the district court to determine whether the Smiths’ carport can be remodeled to comply with Restriction 4, and, if so, to determine the best method for doing so.
Awarding Costs to the Appellees
In their final assignment of error, the Smiths assert that the district court erred *795 in awarding costs to the Appellees. - They argue that if they prevail on this appeal, we should reverse the lower court’s rulings awarding costs to the Appellees and tax the Appellees with costs instead, under La. Code Civ. Proc. art. 1920.[10] However, although we are remanding for the district court to determine the feasibility of a different remedy, the Smiths have not prevailed on appeal. Thus, we pretermit discussion of this assignment of error.
Answer to the Appeal
In their Answer to the Appeal, the Appellees request that the December 16, 2014 judgment taxing costs to the Smiths be increased from $3,960 to $11,189.50, which includes a difference of costs incurred for:
1.) the deposition of the . Smiths’ expert surveyor, Paul Kocke, pursuant to La. Code. Civ.' Proc. art. 1425(F)(8) — $987.20;
⅛2.) the deposition of fact witnesses that were used in connection with various motions for summary judgment and pre-trial motions — $2,426.30; and
3.) obtaining a transcript of the trial in this matter — $3,816.00.
Relying upon La. Rev. Stat.' 13:4533 and La. Code Civ. Proc. art.Í920, the Appellees assert that recovery is allowed for various costs of depositions used'in connection with summary judgment motions;' depositions used for pre-trial motions and transcripts that are required in order to draft a pleading requested by the court. La. Rev. Stat. 13:4533 provides “[t]he costs of the clerk, sheriff, witness’ fees, costs of taking Repositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs,” Moreover, La. Code Civ. Proc. art. 1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party-cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
’ Although it is the general rule that the party cast in judgment should be taxed'with costs, the trial court may assess costs in any equitable manner. Rubenstein v. City of New Orleans, 07-1211, p. 6 (La.App. 4 Cir. 4/30/08), 982 So.2d 964, 968, writ denied, 08-1437 (La.10/3/08), 992 So.2d 1015 [citations omitted]. A trial court has discretion to deny costs to the prevailing party. Id.
Considering the vast discretion of the district court in assessing costs in this matter, we find no abuse of the district court’s discretion in its assessment. Thus, we deny the Answer to the Appeal of the Appellees. ■ . .
| ^DECREE
For the foregoing reasons, we remand the issue of whether the carport of Kyle and'Christine Smith can be made compliant with the Building Restrictions ' for Lakewood South, Section Two, without being completely demolished to the district court with instructions Contained herein. In all other respects, the judgment of the district court, granting the injunction of the Lakewood Property Owners Association and Mark Sámuéls, is affirmed. The Answer to the Appeal is denied.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART; ANSWER TO APPEAL DENIED
*796 TOBIAS, J., concurs in part and dissents in part.
LANDRIEU, J., concurs in part and dissents in part.

. The LPOA is a non-profit corporation organized under the laws of the State of Louisiana in 1964.

. Lakewood South is divided into three sections, numbered one through three. Additionally, there is also a Lakewood North community that is a part of the greater Lakewood community. Lakewood North and all three sections of Lakewood South have their own respective building restrictions; however, there is only one LPOA for the entire Lakewood community.

. Restriction 4 states:
No building shall be located on any lot nearer to the front lot line or nearer to the side street line than the minimum building set back lines shown on the recorded plat. In any event, no building 'shall be located on any lot nearer than 20 feet to the front lot line or nearer than 12 ⅛ feet to any side street line. No building shall be located nearer than five (5) feet to an interior lot line or twenty (20) feet to the rear lot line, except that the sideline restriction shall not,apply to a detached garage, carport or other outbuilding located sixty-five (65) feet or more from the front lot line, which detached garage, carport or other .outbuilding shall • not be nearer to an interior lot line than three (3) feet unless the same is constructed on the rear and side line of the property.. If such detached garage, carport or other outbuilding is not constructed in the rear corner of the lot on both property lines, then same shall not be nearer to an interior lot line than three (3) feet. For the purposes of this covenant, eaves shall not be considered as a part of a building, provided, however, that this will not be construed to permit any portion of the building on a lot to encroach upon another lot: and further, a garage or carport shall be considered detached even if connected with the main building by a walkway, runway, or breezeway. (Emphasis added].

. The only Lakewood community document that references the Architectural Control Committee is the Buildings Restrictions,

." Citing Yiannopoulos, La. Civ. L. Treatise, Vol. II, Sect. 161 (1980): “[t]he owner oF an immovable in a subdivision has always been able to protect and enforce his real rights against other owners of immovables burdened with correlative real obligations, and vice ver-sa.”

. The record shows that the Appellees admitted in discovery that the ARC is a distinct entity from the ACC and is not its successor.

. The Smiths argue that they introduced testimony from Mr. Samuels and LPOA officials discussing Mr. Samuels’ disregard of the Building Restrictions through violation of the .prohibitions against running a business and raising chickens on his property.

. Although the Smiths state that the "restrictions” were abandoned in this assignment of error, the only abandonment claim tried involved Restriction 4. Therefore, we will only address Restriction 4 in our discussion.

. La. Code Civ, Proc. art. 2164 provides:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

. La. Code Civ. Proc. art. 1920 states ‘‘[u]n-less the judgment provides otherwise, costs shall be paid by 'the party cast, and may be taxed by a rule-to show cause.”