| WILLIAM R. FORRESTER, JR. | * | NO. 2023-CA-0335 |
| AND REGAN A. FORRESTER | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| JOSHUA L. BRUNO | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

CONSOLIDATED WITH:

KATHRYN R. MCCOOL AND
DEAN G. SMITH, 1458
NASHVILLE AVENUE, NEW
ORLEANS, LOUSIANA 70115

VERSUS

JOSHUA L. BRUNO, 1448
NASHVILLE AVENUE, NEW
ORLEANS, LOUISIANA 70115

CONSOLIDATED WITH:

NO. 2023-CA-0336

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-02574 C/W 2018-11416, DIVISION "E"
Honorable Omar Mason, Judge
\* \* \* \* \* \*
**Judge Nakisha Ervin-Knott**
\* \* \* \* \* \*

(Court composed of Judge Dale N. Atkins, Judge Rachael D. Johnson, Judge
Nakisha Ervin-Knott)

David C. Forrester
LAW OFFICE OF DAVID C. FORRESTER, LLC
6616 Sevenoaks Avenue
Baton Rouge, LA 70806

    COUNSEL FOR PLAINTIFF/APPELLEE

H. Minor Pipes, III
Katherine S. Roth

Jennifer S. Martinez
PIPES MILES BECKMAN, LLC
1100 Poydras Street, Suite 3300
New Orleans, LA 70163

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED; ANSWER TO APPEAL DENIED**
**DECEMBER 7, 2023**

NEK
DNA
RDJ

Joshua L. Bruno (hereinafter "Mr. Bruno") seeks review of the trial court's January 25, 2023 bench trial judgment that determined he did not meet his burden of proof establishing ownership by way of thirty-year acquisitive prescription and fixed the boundary line between his property and adjacent property, owned by William R. Forrester, Jr., and Regan A. Forrester (hereinafter collectively referred to as "the Forresters"), as reflected in the November 23, 2015 Boundary Survey Plat prepared by R.W. Krebs, L.L.C., Richmond W. Krebs Professional Land Surveying. After considering the record before this Court, we affirm the judgment of the trial court and deny the answer to appeal.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The Forresters purchased immovable property located at 1442 Nashville Avenue, in New Orleans, Louisiana (hereinafter "Forrester property"), on March 9, 1984. At that time, a metal chain-link fence existed on the property. On August 17, 2015, Mr. Bruno purchased the adjacent property located at 1448 Nashville Avenue (hereinafter "Bruno property"). By that time, the fence was at least partially composed of wooden panels that had rotted. During the course of his property ownership, Mr. Bruno replaced the rotten fence, began building a pool in his

1

backyard, and erected a steel and wooden structure to house his air conditioning compressors and pool pump. Believing that the new fence, air conditioning compressors, and pool pump encroached on their property, the Forresters requested that Mr. Bruno cease encroaching upon their property. However, their request was unsuccessful.

In 2016, the Forresters filed a petition to fix boundary. Mr. Bruno answered, contending that, through thirty-year acquisitive prescription, his ancestors-in-title acquired ownership of the disputed tract of property in 1969, which he in turn acquired in his 2015 act of sale. This matter proceeded as a bench trial on September 19, 2022.

During the trial, several witnesses were called to testify including Tilden Dufrene (hereinafter "Mr. Dufrene"), Mr. Forrester, Mrs. Forrester, and Mr. Bruno. In support of his position, Mr. Bruno presented several surveys of the Forrester and Bruno properties. Mr. Dufrene, an expert in civil engineering and land surveying originally retained by Mr. Bruno, was called to testify by the Forresters. Mr. Dufrene reviewed the historical surveys and opined on the location of the boundary fence.

In 1939, a survey prepared by the Gilbert Kelly Company of the Forrester property evidenced a fence on the right side of the property. At trial, Mr. Dufrene opined that the fence was 0.5.6 feet (5.75 inches) inside the Forrester property at the front, extending to the back of the property and tying into the corner of the shed. He further explained that the entirety of the fence was on the Forrester side of the surveyed property line.

The following year, in 1940, the Carmen Robert Company performed a survey that evidenced a fence on the right side of the Forrester property. Mr. Dufrene

2

reviewed this survey and testified at trial that the fence was located 0.4.0 feet (4 inches) inside of the Forrester property near the middle of the Bruno home.

In 1964, a survey prepared by the J.J. Krebs & Sons company depicted a fence on the right side of the Forrester property. Mr. Dufrene reviewed the 1964 survey and opined that it indicated a fence positioned 0.4.0 feet (4.8 inches) on the Forrester property.

In 1967, J.J. Krebs & Sons prepared another survey, which, like the prior surveys, revealed a fence on the right side of the Forrester property. Mr. Dufrene opined that the fence was located 0.4.0 feet (4.8 inches) inside of the Forrester property near the middle of the house on Bruno's property.

In 1972, a survey performed by the Gilbert, Kelly, and Couturie, Inc. firm showed a fence on the right side of the Forrester property. Mr. Dufrene testified that the fence shown on this survey was located 0.5.6 feet (5.75 inches) on the inside of the Forrester property, just as it did on the 1939 survey.

Since the 1972 survey, at least five other surveys were made showing the Forrester/Bruno properties. These include a 1974 survey by S.Z.S. Consultants; a 1984 survey by J.J. Krebs & Sons (with field notes); a 1993 survey by Gilbert, Kelly, and Couturie, Inc.; a 2003 survey by Gilbert, Kelly, & Couturie, Inc.; and a 2015 survey by R.W. Krebs, LLC.

At the conclusion of trial, the trial court allowed the parties to submit post-trial briefs, and the trial court rendered Judgment on January 25, 2023. In relevant part, the trial court judgment held that Mr. Bruno did not meet his burden of proof establishing ownership by way of 30-year acquisitive prescription and fixed the boundary between the two properties as reflected in the November 23, 2015 Boundary Survey Plat prepared by R.W. Krebs, L.L.C., Richmond W. Krebs

Professional Land Surveying. The trial court provided no oral or written reasons for judgment.

On March 1, 2023, Mr. Bruno filed a timely motion for suspensive appeal, which was signed on March 3, 2023. The Forresters timely answered Mr. Bruno's appeal, asserting that the failure to award court costs and expert fees to them as the prevailing parties was error by the trial court.

## STANDARD OF REVIEW

"A trial court's determination with regard to whether a party has possessed property sufficient to establish acquisitive prescription is subject to the manifest error standard of review." *Grieshaber Family Props., LLC v. Impatiens, Inc.,* 2010-1216, p. 6 (La. App. 4 Cir. 03/23/11), 63 So. 3d 189, 194 (citing *St. John Baptist Church of Phoenix v. Thomas,* 2008–0687, p. 7 (La. App. 4 Cir. 12/3/08), 1 So. 3d 618, 623). The boundary location is also a question of fact, and the fact-finder's determination should not be reversed on appeal in the absence of manifest error. *Horaist v. Pratt*, 2021-00166, p. 2 (La. 03/23/21), 312 So. 3d 1093, 1095.

## DISCUSSION

On appeal, Mr. Bruno assigns two errors for this Court's review, namely:

(1) No reasonable basis exists for the trial court's Judgment that Bruno failed to prove he acquired ownership of the Disputed Tract by thirty-year acquisitive prescription, when (i) every survey of the Forrester property between 1939 and 1972 -spanning more than thirty years - depicts a fence located at least four inches off of the Surveyed Property Line on the Forrester side; (ii) no record evidence defeats the Civil Code presumption that Bruno's ancestors-in-title continually possessed the Disputed Tract in the years in between surveys; and (iii) no record evidence defeats the Civil Code presumption that Bruno's ancestors-in-title intended to possess the Disputed Tract as owner.

(2) The trial court further erred in setting the boundary "as reflected in the November 23, 2015 Boundary Survey Plat prepared by R.W. Krebs, L.L.C. . . . ," rather than the Historical Fence Line - i.e., at

4

least four inches on the Forrester side of the Surveyed Property Line - and thus should have concluded that Bruno's fence, pool equipment, and air conditioning equipment do not encroach on the Forresters' property.

Ownership of immovable property may be acquired through a ten- or thirty-year prescriptive period. La. C.C. arts. 3473, *et seq*. A possessor without just title is considered a bad-faith possessor and is subject to a thirty-year prescriptive period. La. C.C. art. 3486. The party claiming title to the tract of land by acquisitive prescription bears the burden of proof. *Grieshaber,* 2010-1216, p. 7, 63 So. 3d at 195. A person pleading prescription of thirty years bears the burden of proving "*continuous*, *uninterrupted*, peaceable, public, and *unequivocal* corporeal possession for thirty years." *1026 Conti Holdings, LLC v. 1025 Bienville, LLC*, 2021-0417, p. 18 (La. App. 4 Cir. 06/29/22), 366 So. 3d 442, 454 (citation omitted) (emphasis in original). One is presumed to intend to possess as owner unless they begin possessing in the name of and for another. La. C.C. art. 3427.

A boundary action is an action brought by one landowner against their adjacent landowner to determine the ownership or possession of a disputed portion of land. *Marcello v. Jo-Blanche Corp.*, 2020-1113, pp. 6-7 (La. App. 1 Cir. 06/04/21), 330 So. 3d 632, 637-38. If both parties rely on title to establish the boundary, preference will be given to the more ancient title. La. C.C. art. 793. However, if one or both parties rely on acquisitive prescription, the boundary shall be fixed according to the limits established by the prescription rather than the titles. La. C.C. art. 794. "Tacking" is permitted in boundary actions. La. C.C. art. 3442 cmt. (d). If a party proves that they and their ancestors had possession at different

times, the party is presumed[1] to have possessed during the intermediate period. La. C.C. art. 3443.

If a party and their ancestors in title possessed for thirty years without interruption, proving acquisitive prescription, more than their title called for, the boundary line should be fixed along those lines. La. C.C. art. 794. "[O]wnership of immovable property under **record title** may be eclipsed and superseded by ownership acquired under **prescriptive title**." *Kadair v. Hampton*, 2013-1171, p. 9 (La. App 1 Cir. 07/10/14), 146 So. 3d 694, 701 (emphasis in original). For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. *Secret Cove, L.L.C. v. Thomas*, 2002-2498, p. 4 (La. App. 1 Cir. 11/07/03), 862 So. 2d 1010, 1015.

During the one-day bench trial, Mr. Dufrene, who was originally hired by Mr. Bruno testified regarding various surveys of the Forrester and Bruno properties. In examining historical surveys – specifically the 1939, 1940, 1964, 1967, and 1972 surveys – Mr. Dufrene testified that there was a fence between the Forrester and Bruno properties that was located at least four inches on the Forrester side of the property. There was no evidence in the record indicating that the Forresters disputed the existence of a fence, during these different time periods. However, these surveys showed that at various points in time, different fences with varying lengths and positions existed.

For instance, Mr. Dufrene testified that in the 1939 Gilbert Kelly Company survey, the fence appears to start at the front corner of the large shed on the

---

[1] While not explicitly included in the code article, implicit is that this presumption is rebuttable by the party who claims to have possession in title.

6

Forresters' property, which shed extended across most of the Forresters' backyard. The front corner of the shed appears to be about 10 feet from Mr. Bruno's walkway, though there are no exact measurements. The fence is measured 0.5.6 feet (5.75 inches) on the Forrester side of the property line, and it extends an uncertain distance towards Nashville Avenue. The length of the fence is not measured. While noting that the fence appears to be generally in the same position as it was in the 1939 survey, Mr. Dufrene explained that the fence in the 1940 Carmen Robert Company survey measured 0.4.0 feet (4 inches) on the Forrester side of the property line, and the length is not measured.

Opining on the 1964 and 1967 J.J. Krebs & Sons surveys, Mr. Dufrene testified that these surveys reflect a different fence, in a different location, than the fence depicted in the 1939 and 1940 surveys. The 1964 fence starts at the back of the shed at Mr. Bruno's walkway and travels directly on the property line until a position near the back of Mr. Bruno's deck, at which point it starts to encroach on the Forresters' property. Mr. Dufrene testified that there was no measurement where the encroachment started in the back or where the fence started in the front, and he could only speculate on those locations. However, Mr. Dufrene definitely stated that the fence in the 1964 survey was in a different location than the fences in the 1940 and 1972 surveys. Mr. Dufrene further testified that in the 1972 Gilbert, Kelly, and Couturie survey, a shorter fence appears, and unlike the 1964 survey, the fence starts at the walkway and is measured 0.5.6 feet (5.75 inches) on the Forrester side of the property line.

Mr. Bruno strictly relied on historical surveys to establish ownership by way of thirty-year acquisitive prescription, as he maintained that his ancestors-in-title possessed at least four inches of land on the Forresters' side of the property line for

over thirty years. Yet, the only fact proven by these surveys was the existence of a fence that was positioned in different places at various points in time. One survey showed a fence beginning and ending at some point, while another survey showed a different fence beginning and ending at a different point. As the positions and lengths of the fences varied, these surveys did not establish that Mr. Bruno's ancestors-in-title continuously and unequivocally possessed any portion of the Forrester property for thirty years between 1939 and 1972. Therefore, Mr. Bruno's first assignment of error is without merit.

Likewise, this Court finds that Mr. Bruno's second assignment of error is meritless. Due to Mr. Bruno's inability to meet his burden of establishing ownership of four inches of land on the Forresters' side of the property line through thirty-year acquisitive prescription, the trial court did not err in setting the boundary line in accordance with the November 23, 2015 Boundary Survey Plat prepared by R.W. Krebs, L.L.C. Mr. Dufrene testified that in 2017, he was hired by Mr. Bruno to survey his property, and that he completed several surveys for Mr. Bruno dated October 3, 2017; May 21, 2018; September 2018; and October 2018. Mr. Dufrene also testified that the trial court ordered the preparation of a joint survey report (hereinafter "report")[2] dated November 9, 2018, which he prepared. Mr. Dufrene explained that there were no significant disagreements between himself and the other surveyors involved in preparing the report over the location of the property lines for

---

[2] The trial court ordered the completion of a joint survey report, which included the following properties: (1) the Forresters' property, located at 1442 Nashville Avenue, in New Orleans, Louisiana; (2) Mr. Bruno's property, located at 1448 Nashville Avenue, in New Orleans, Louisiana; and (3) a neighboring property located at 1458 Nashville Avenue, in New Orleans, Louisiana. The report included a November 23, 2015 survey of the Forresters' property prepared by R.W. Krebs, LLC; an October 3, 2017 survey of Mr. Bruno's property prepared by Mr. Dufrene; and an August 17, 2017 survey of the property located at 1458 Nashville Avenue prepared by Gilbert, Kelly, and Couturie, Inc.

the properties, and the October 3, 2017 and the November 23, 2015 surveys were consistent. Based on this testimony, there existed a reasonable basis for the trial court to fix the boundary line in accordance with the November 23, 2015 survey as it was used in the court ordered report, and no one disputed the accuracy of this survey.

This Court notes that the trial court did not provide any reasons for judgment, thus, we have no insight into the trial court's factual determinations. Nonetheless, an examination of the record shows that there was factual evidence to support the trial court's determination that Mr. Bruno did not meet his burden of establishing ownership by way of thirty-year acquisitive prescription, and the trial court's fixing of the boundary line in accordance with the November 23, 2015 Boundary Survey Plat.

Accordingly, we conclude that the trial court was not manifestly erroneous in its judgment regarding thirty-year acquisitive prescription and the fixing of the boundary line.

## ANSWER

In their answer to the appeal, the Forresters assert that the trial court erred in not awarding court costs and expert fees to them as prevailing parties at trial. Additionally, the Forresters assert that Mr. Bruno's appeal is "so utterly meritless" that they are entitled to an award of damages for the filing of a frivolous appeal.

Procedurally, we find that their answer is properly before this Court. Louisiana Code of Civil Procedure Article 2133 (A) states, in pertinent part:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal

9

> on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.

The Forresters filed an answer seeking to have the trial court's judgment modified to include an award of court costs and expert fees. A notice of incomplete record was issued on May 25, 2023, requesting additional transcripts. The Forresters filed their answer on June 1, 2023. Subsequently, on June 27, 2023, a notice of completion of record was issued noting the supplementation of the outstanding transcripts. The Forresters' answer to the appeal was filed less than fifteen days after the lodging of the record. Thus, the Forresters' answer is procedurally proper and can be considered by this Court.

Addressing the substance of the Forresters' answer to the appeal, this Court notes that the Forresters filed a motion for ruling on submitted exception of no right of action on June 14, 2022. In the memorandum in support of their motion, the Forresters specifically requested an "award of related court costs and a reasonable expert witness fee for Ronald Scalise, who prepared a detailed report and spent a day in court."[3] Further, this Court notes that during the hearing on the boundary action, the Forresters made no specific requests for court costs and expert fees on the record.[4] However, in their post-trial memorandum, the Forresters "seek all costs incurred in this action along with any and all expert fees." Therefore, while Mr.

---

[3] On January 22, 2020, the trial court conducted a hearing on the Forresters' exceptions of no cause of action and no right of action. The Forresters retained Professor Ronald Scalise, Jr. ("Professor Scalise"), the John Minor Wisdom Professor of Civil Law at Tulane University Law School, to provide an opinion regarding the property issues involved in the manner. At the hearing, the parties stipulated to Professor Scalise being qualified as an expert in the field of Louisiana property law and real estate transaction, and he provided expert testimony. On February 5, 2020, the trial court rendered judgment granting in part the exception of right of action. The Forresters' June 14, 2022 motion was filed to resolve the outstanding issues related to the exception of no right of action.

[4] At the conclusion of the boundary action portion of the September 19, 2022 hearing, the trial court stated, "For purposes of the boundary action since we're kind of keeping them separate in a sense in lieu of closing arguments we will allow post-trial memos to be filed with the Court with the same deadline."

Bruno asserts in his response to the answer to appeal that the Forresters did not first seek court costs and expert fees from the trial court, his contention is erroneous as the Forresters specifically requested court costs and expert fees in relation to the exception of no right of action and boundary action from the trial court.

The January 25, 2023 judgment states, in pertinent part:

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that any and all other relief prayed for in connection with Plaintiffs' Petition to Fix Boundary, Plaintiffs' Exception of No Right of Action and Defendant's Petition for Division by Licitation but not specifically granted herein is **DENIED.**

No other portions of the judgment address court costs and expert fees. Nevertheless, based on the clear language of the judgment, and the fact that the Forresters requested these costs and fees from the trial court, we find that the trial court considered the Forresters' requests for court costs and expert fees and denied their requests.

"[T]he assessment of costs lies within the trial court's discretion, and that assessment of costs is to be reversed only if the trial court abuses that discretion." *ETI, Inc. v. Buck Steel, Inc.*, 2016-0602, p. 15 (La. App. 4 Cir. 2/1/17), 211 So. 3d 439, 448 (citing *Delaney v. Whitney Nat. Bank*, 1996–2144, p. 17 (La. App. 4 Cir. 11/12/97), 703 So. 2d 709, 720). Our jurisprudence indicates that although the general rule is that the party cast in judgment should be taxed with costs, the trial court has discretion to assess costs in any equitable manner. *Id.* (citing *Lakewood Prop. Owners' Ass'n v. Smith*, 2014-1376, p. 25 (La. App. 4 Cir. 12/23/15), 183 So. 3d 780, 795). Furthermore, "the trial court has discretion to deny costs [even] to the prevailing party." *Lakewood Prop. Owners' Ass'n*, 2014-1376, p. 25, 183 So. 3d at 795.

In *Miralda v. Gonzalez*, this Court observed that the "record is devoid of any indication as to why the trial court declined to tax [the non-prevailing party] with all the costs.... we are unable to conclude that the trial court abused its discretion in condemning each party to bear his own costs." 2014–0888, p. 32 (La. App. 4 Cir. 2/4/2015), 160 So. 3d 998, 1018. In the matter *sub judice*, the record contains no information as to the trial court's decision to deny the Forresters' requests for court costs and expert fees. Consequently, we cannot find an abuse of the trial court's discretion in failing to grant the Forresters' requests for court costs and expert fees.

In their answer, the Forresters also assert that they are entitled to damages for frivolous appeal under La. C.C.P. art. 2164.[5] "Our jurisprudence reflects that '[a]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted[] due in part to the possible chilling effect on the appellate process.'" *Favret v. Favret*, 2022-0820, p. 21 (La. App. 4 Cir. 7/31/23), 371 So. 3d 511, 527 (quoting *Ellison v. Romero*, 2020-0376, p. 13 (La. App. 4 Cir. 8/11/20), 365 So. 3d 1, 9). "Likewise, because the statute allowing the imposition of damages for frivolous appeal is penal in nature, it must be strictly construed in favor of the appellant." *Id.* (quoting *Ellison*, 2020-0376, p. 14, 365 So. 3d at 9) (internal quotation marks omitted). Additionally, our "jurisprudence reflects that damages for a frivolous appeal may be awarded 'if the appellant is trying to delay the action or if the appealing counsel does not seriously believe the law he or she advocates.'" *Id.*

---

[5] Louisiana Code of Civil Procedure Article 2164 states:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

at p. 22, 371 So. 3d at 527 (quoting *Bruno v. Medley*, 2020-0515, p. 1 (La. App. 4 Cir. 11/2/20), 310 So. 3d 580, 592).

Consequently, "[e]ven when an appeal lacks serious legal merit, frivolous appeal damages will not be awarded unless the appeal was taken solely for the purpose of delay or the appellant's counsel is not serious in the position he [or she] advances." *Id.* (first alteration in original) (quoting *Miralda v. Gonzalez*, 2014-0888, p. 33 (La. App. 4 Cir. 2/4/15), 160 So. 3d 998, 1019). Thus, "[a]ny doubt regarding whether an appeal is frivolous must be resolved in the appellant's favor." *Id.* (alteration in original) (quoting *Streiffer v. Deltatech Constr., LLC*, 2019-0990, p. 17 (La. App. 4 Cir. 3/25/20), 294 So. 3d 564, 578).

Applying the rule of strict construction against the Forresters and considering the record in this case, we cannot conclude that Mr. Bruno's appeal is frivolous. The record does not support a finding that this appeal was filed for the purpose of delaying the action or that Mr. Bruno's counsel did not seriously believe the law or position advocated. Therefore, this matter does not meet the requirements of a frivolous appeal, and we deny the Forresters' request for frivolous appeal damages. Accordingly, the answer to appeal is denied.

## DECREE

For the foregoing reasons, we affirm the trial court's January 25, 2023 judgment and deny the answer to appeal.

**AFFIRMED; ANSWER TO APPEAL DENIED**